## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN BRYANT, individually and on
behalf of all others similarly situated,

     Plaintiff,

v.                               Case No. 8:23-cv-2171-TPB-SPF

BYRON UDELL & ASSOCIATES INC.
d/b/a ACCUQUOTE, and DIGITAL
MEDIA SOLUTIONS, LLC,

     Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BYRON UDELL & ASSOCIATES INC. D/B/A ACCUQUOTE'S MOTION TO DISMISS

This matter is before the Court on "Defendant Byron Udell & Associates Inc. d/b/a AccuQuote's Motion to Dismiss and Incorporated Memorandum of Law," filed on November 27, 2023. (Doc. 25). On December 18, 2023, Plaintiff John Bryant filed a response in opposition. (Doc. 33). The Court held a hearing to address this and other matters on January 29, 2024. (Doc. 43). After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background

This case concerns an alleged violation of the Telephone Consumer Protection Act and the Virginia Telephone Privacy Protection Act based on a single phone call. Plaintiff John Bryant, an individual residing in Virginia, registered his cell phone number on the National Do Not Call Registry. However, on August 31, 2022, Plaintiff received a pre-recoded call from a spoofed Virginia area code. The call mentioned reducing or eliminating costs not covered by Medicare, and Plaintiff was then transferred to a

licensed insurance agent with Mutual of Omaha for more information.  Plaintiff subsequently terminated the call.

On March 28, 2023, Plaintiff filed suit against Mutual of Omaha in the Eastern District of Virginia, although he later settled with Mutual of Omaha and voluntarily dismissed his claims against it with prejudice.  According to Plaintiff, during discovery, he learned that Defendant Byron Udell & Associates Inc. d/b/a AccuQuote ("AccuQuote"), or a vendor that AccuQuote retained, made the prerecorded call at issue.  On June 20, 2023, Plaintiff filed an amended complaint to add AccuQuote, an Illinois corporation, as a defendant.  He also later added Defendant Digital Media Solutions, LLC ("DMS"), a Delaware limited liability company with its principal place of business in Florida.

In the Virginia litigation, the parties engaged in dispositive motion briefing, fact discovery, and expert discovery.  On August 11, 2023, the Virginia court granted AccuQuote's motion to dismiss, permitting leave to amend.  *See Bryant v. Byron Udell & Assocs. Inc.*, No. 1:23-cv-00414 (AJT/LRV), 2023 WL 5180351 (E.D. Va. Aug. 11, 2023). Rather than amend, on August 18, 2023, Plaintiff voluntarily dismissed his case pursuant to Rule 41(a).  On August 22, 2023, the Virginia court dismissed and closed the case.  On September 26, 2023, Plaintiff filed the instant complaint, which is based on the same conduct alleged in his prior Virginia complaint.

## Legal Standard

### *Rule 12(b)(1)*

Under Rule 12(b)(1), the plaintiff bears the burden to establish the district court's subject matter jurisdiction.  *See, e.g.*, *Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010).  A party may attack subject matter jurisdiction through a facial attack or a factual

attack.  *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  "Facial attacks . . . 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.'"  *Id.* (quoting *Lawrence*, 919 F.2d at 1529).  Alternatively, "[f]actual attacks challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside of the pleadings, such as testimony and affidavits, are considered.'"  *Id.* (quoting *Lawrence*, 919 F.2d at 1529).

### *Rule 12(b)(6)*

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id.*  (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the

case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

<u>Analysis</u>

***Subject Matter Jurisdiction***

AccuQuote mounts a facial challenge to the Court's subject matter jurisdiction, arguing that Plaintiff does not sufficiently allege that Plaintiff's purported injury is fairly traceable to AccuQuote's purported conduct. In the amended complaint, Plaintiff alleges that Defendant Byron Udell & Associates Inc. d/b/a AccuQuote hired Defendant Digital Media Solutions, LLC, who placed automated telemarketing calls, while acting on behalf of AccuQuote. These and other allegations of the amended complaint are sufficient to support an inference that the contested phone calls are fairly traceable to AccuQuote. *See, e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("[E]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."). The motion to dismiss is therefore denied as to this ground.

***Personal Jurisdiction***

AccuQuote also argues that the Court lacks personal jurisdiction over it as a non-resident entity. In its response in opposition, Plaintiff asserts that the alleged basis for personal jurisdiction is AccuQuote's general and ongoing course of business – specifically, by hiring a Florida company to make telemarketing phone calls on its behalf.

When determining whether to exercise personal jurisdiction over a defendant, a court first considers whether jurisdiction is appropriate under the state's applicable long arm statute. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir.

2013). If so, the court then evaluates whether the exercise of jurisdiction over the defendant would violate the due process clause of the Fourteenth Amendment. *Id*. The plaintiff bears the burden of alleging sufficient facts to make out a prima facie case of personal jurisdiction. *Id*.

<u>General and Specific Jurisdiction Under Florida Long-Arm Statute</u>

There are two types of personal jurisdiction – general and specific. With general jurisdiction, a court may hear "*any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 582 U.S. 255, 262 (2017). But a court may exercise general personal jurisdiction only when the defendant's contacts with the forum state are so constant and pervasive that it is essentially at home. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). A corporation is generally at home in its state of incorporation and where it has its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Plaintiff does not allege that AccuQuote is either incorporated in or has its principal place of business in Florida. He also does not otherwise allege that AccuQuote regularly conducts business or has any offices in Florida, and there are no facts pled from which the Court could infer that AccuQuote engaged in constant and pervasive business activity within Florida. Consequently, it does not appear that general jurisdiction exists.

"Specific jurisdiction is very different." *Bristol-Myers Squibb Co*., 582 U.S. at 262. Specific jurisdiction requires that the lawsuit "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id*. (quoting *Daimler*, 571 U.S. at 137). In his response in opposition, Plaintiff argues that AccuQuote is subject to specific jurisdiction under the

long-arm statute because it is "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida]." § 48.193, *F.S.*  To establish that a defendant is carrying on a business venture in Florida, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Future Tech. Today, Inc.*, 218 F.3d at 1249). Although engaging in a single act for profit could amount to a business venture, not every gainful transaction involving a Florida resident necessarily amounts to a business venture.  *Mey v. Enterprise Financial Group, Inc.*, 2016 WL 7338411, at *4 (M.D. Fla. Dec. 19, 2016).  Some factors to consider include "the presence and operation of an office in Florida, [ ] the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167 (internal citations omitted).

In his amended complaint, Plaintiff alleges that AccuQuote "sells insurance leads in Florida" and "hires vendors to sell insurance leads on its behalf from Florida," and that this action arises from calls to sell insurance.  He also alleges that "[d]uring discovery in a related action, Mutual of Omaha revealed that AccuQuote, or a vendor they retained, made" the pre-recorded phone call that Plaintiff received, and that AccuQuote subsequently identified Crisp Marketing, who has since been acquired by DMS, as having made the call at issue.  Plaintiff does not allege any information about whether AccuQuote has a Florida office, a Florida business license, the number of Florida clients served by AccuQuote, or the percentage of overall revenue gleaned from Florida

clients. Plaintiff has therefore failed to sufficiently allege a course of general business

activity within the state to make a prima facie case for specific jurisdiction under §

48.193, *F.S.*

Due Process

To determine whether exercising specific jurisdiction comports with notions of due

process, courts employ a three-part test, examining:

> (1) whether the plaintiff's claims arise out of or relate to at
> least one of the defendant's contacts with the forum [
> ("Relatedness Prong") ]; (2) whether the nonresident defendant
> purposefully availed himself of the privilege of conducting
> activities within the forum state, thus invoking the benefit of
> the forum state's laws [ ("Purposeful Availment Prong") ]; and
> (3) whether the exercise of personal jurisdiction comports with
> traditional notions of fair play and substantial justice [ ("Fair
> Play Prong") ].

*Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1349 (M.D.

Fla. 2018) (quoting *Louis Vuitton*, 736 F.3d at 1355). The plaintiff must establish the

first two prongs, and if he does so, the defendant must then make a compelling case as to

the third.

Considering the purposeful availment prong, because the case involves an

intentional tort, there are two appliable tests: (1) the "effects test" or a traditional

purposeful availment analysis. *See id.* (internal citations omitted). TCPA claims are

frequently analyzed under the effects test. "Under the *Calder* effects test, a nonresident

defendant's tort must have been: (1) intentional; (2) aimed at the forum state; and (3)

caused harm that the defendant should have anticipated would be suffered in the forum

state." *Id.* (quoting *Lovelady*, 544 F.3d at 1286). "[C]ourts have declined to find personal

jurisdiction over TCPA defendants when they had no reason to know that their conduct

would be felt in [the forum state], including because the calls or texts were made to [non-resident] phone numbers." *Pinn v. Consumer Credit Counseling Foundation, Inc.*, 2023 WL 6960293, at *6 (N.D. Cal. Oct. 20, 2023) (citations omitted).  After all, "[i]t should go without saying that an allegedly tortious call to [a state other than Florida] does not amount to an intentional act expressly aimed at [Florida]." *Id.* (quoting *Born v. Celtic Marketing LLC*, 2020 WL 3883273, at *4 (C.D Cal. May 20, 2020)).

Here, Plaintiff essentially alleges that AccuQuote hired DMS to make calls from Florida to generate business leads for AccuQuote, and that DMS called Plaintiff from Florida to generate a lead for AccuQuote.  Plaintiff is a resident of Virginia, where he received the call at issue.  He does not allege facts to demonstrate that AccuQuote purposefully directed its activities at residents of Florida, or that AccuQuote should have anticipated that any resulting injuries would occur in this state.[1]

Plaintiff appears to rely on a contractual relationship between AccuQuote and DMS to support his jurisdictional arguments.  However, even if there is a contractual relationship between AccuQuote and Florida-resident DMS, "[a]n out-of-state defendant's mere agreement with a third-party located within the forum, pursuant to which that third-party independently operates an advertising or solicitation campaign" is insufficient to exercise specific jurisdiction over a foreign defendant.  *See id.*; *Born*, 2020 WL 3883273, at *4 (holding that out-of-state defendant's agreement with third-party

---

[1] This does not mean that the Court cannot maintain specific jurisdiction over non-Florida class members' claims if there were an appropriate named plaintiff.  *See, e.g.*, *Tickling Keys, Inc.*, 305 F. Supp. 3d at 1350-51; *Burke v. Credit One Bank, N.A.*, No. 8:18-cv-728-EAK-TGW, 2019 WL 1468536, at *6 (M/D. Fa. Feb. 5, 2019) (collecting cases).  This simply means that at this juncture, Plaintiff has not made a prima facie case for personal jurisdiction over AccuQuote.  If a named plaintiff could allege intentional conduct aimed at Florida that caused harm that AccuQuote should have anticipated would be suffered in Florida, the outcome would likely be different.

located within forum does not provide sufficient basis for exercise of specific jurisdiction over foreign defendant).   Importantly, although Plaintiff attempts to argue that DMS was acting as an "agent" of AccuQuote, he does not actually allege that AccuQuote substantially controlled DMS's activities in any meaningful way such that DMS's Florida contacts could be attributable to AccuQuote for purposes of the specific jurisdiction inquiry.[2]  *See Weisbein v. Allergan, Inc.*, No. SA CV 20-0801 FMO (ADSx), 2022 WL 1288222, at *5 (C.D. Cal. Mar. 28, 2022) (granting motion to dismiss because alleged involvement of third parties did not justify exercising personal jurisdiction over non-resident defendant when plaintiff did not sufficiently allege agency relationships); *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1320 (S.D. Fla. 2006) (granting motion to dismiss because judgment creditor did not sufficiently demonstrate operational control by impleaded third party, explaining that "[a] litigant needs to demonstrate '*operational* control' in order to demonstrate that a principle operated, conducted, engaged in, or carried on business activities within Florida through agents pursuant to Florida Statutes § 38.193(1)(a).").

Consequently, at this time, it does not appear that the Court can maintain personal jurisdiction over AccuQuote.  In an abundance of caution, the Court will grant leave for Plaintiff to file an amended complaint to establish personal jurisdiction.  If Plaintiff intends to rely on an alleged agency relationship between AccuQuote and DMS (or some other entity), he must plead more specific facts as to the nature of that

---

[2] Plaintiff alleges only that AccuQuote "dictated the content of telemarketing calls" by instructing DMS to ask potential customers if they were interested in insurance or not and only compensating DMS for potential transfers that were interested in insurance. These vague and conclusory allegations do not constitute substantial operational control.

relationship, including the degree of operational control AccuQuote had over any alleged conduct.  *See id.* ("[O]perational control includes, for instance, evidence that the principal controlled the internal affairs of an agent or determined how the agent operated on a daily basis.").

Because the Court is dismissing the complaint for lack of personal jurisdiction at this time, and because the amended complaint may eliminate AccuQuote's arguments that Plaintiff fails to state any direct or vicariously liability claims, the Court does not further address AccuQuote's Rule 12(b)(6) arguments.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant Byron Udell & Associates Inc. d/b/a AccuQuote's Motion to Dismiss and Incorporated Memorandum of Law" (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

(1) Plaintiff is directed to file an amended complaint on or before March 27, 2024. Failure to file an amended complaint as directed will result in this Order becoming a final judgment.  *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>12th</u> day of March, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**